# Court of Appeals.

## June, 1884.

## PEOPLE v. HOOGHKERK.*

RIGHT OF DEFENDANT TO CHALLENGE GRAND JURY.—CODE
CRIM. PROC. §§ 238, 239, 399.—EVIDENCE OF ACCOM-
PLICE.—L. 1881, CH. 532, UNCONSTITUTIONAL.

The right of a defendant, whether before or after indictment, to challenge
the panel of the grand jury because irregularly or defectively con-
stituted, no longer exists under the Code of Criminal Procedure.

The defendant can raise only such objections as under section 239 of that
Code he may urge against individual grand jurors for bias or other
causes specified in that section. The court has under section 238 a
discretionary power to be exercised of its own volition, and in view
of all the circumstances, to discharge the panel of the grand jury.

Independently of the provisions of section 399 of the Code of Criminal
Procedure in relation to the necessity of corroboration of the evi-
dence of an accomplice, corroborative evidence, to have any value,
must be evidence from an independent source of some material fact,
tending to show, not only that the crime charged has been committed,
but that the defendant is implicated in it.

But neither section 399 of the Code of Criminal Procedure nor the doc-
trine previously declared by the courts requires that the whole case
should be proved outside of the testimony of the accomplice.
Declarations of fellow conspirators made in defendant's absence im-
plicating defendant in the commission of the crime charged and sub-
sequently communicated to defendant are admissible against
defendant.

Questions put to defendant on cross-examination with reference to his
connection with other similar offences (e. g., with other fires), in a
trial for arson are admissible in the discretion of the court as affect-
ing his credibility.

L. 1881, ch. 532, is unconstitutional so far as it relates to the selection
of grand jurors in Albany county (Following People v. Petrea, 92
N. Y. 128; 1 N. Y. Crim. Rep. 233).

* See People v. Petrea, 1 N. Y. Crim. Rep. 198, 233; People v. Duff,
Id. 307; People v. Fitzpatrick, Id. 425; People v. Dempsey, 2 Id. 117.

APPEAL by defendant William A. Hooghkerk from a judgment of the general term of the Supreme Court in the Third Department, of January 30, 1884, affirming a judgment of the court of Oyer and Terminer of Albany county, Hon. A. M. Osborn presiding, convicting defendant of arson in the third degree, committed January 2, 1883.

The indictment against defendant was found September 15, 1883.

On January 2, 1883, early in the morning, a stable, located in the city of Albany and occupied by one George S. Jones, was with its contents, consisting of five horses, hay, feed and harness, destroyed by fire. The contents of the building were insured, and the insurance was collected. Some months thereafter the defendant Hooghkerk and Peter Nugent were charged in connection, with Jones, with having set the stable on fire, and Hooghkerk and Nugent were held to await the action of the grand jury upon a charge of arson in the third degree.

At the opening of the next term of the Court of Sessions, and as the persons summoned to appear there to act as grand jurors, were about to be sworn, the defendant read and filed in open court a written protest and objection, duly verified by him, against the swearing and organization or recognition by the court of such persons, or any of them, as a grand jury, for the reason that they were not drawn or summoned as required by law ; in this, that they had not, nor any one of them, been drawn from a list of the names of 300 persons, or any list of persons, prepared by the supervisors of the county, to serve as grand jurors ; but, on the contrary, that the names of each and every of said persons were drawn from the box containing the names of petit jurors pursuant to chapter 532, of the Laws of 1881, under the pretense that said act repealed the prior law regulating the subject ; whereas the defendant insisted that said act was in contravention of the constitution prohibiting the passage of a private or local bill for selecting, drawing, summoning or impanneling grand jurors, as it had not been reported to the legislature by any commissioners appointed to revise the statutes, and none of the persons thus drawn were the same who, should and would have been drawn pursuant to law. The defendant's counsel also objected to the persons called as grand

jurors being sworn as a grand jury, on the same grounds. The district attorney replied to the objections, not denying any of the facts stated, but alleging that the persons called to serve as grand jurors were competent and duly qualified jurors, drawn from the body of the people of the county summoned by the sheriff to attend as grand jurors, and that they were drawn from the only box in existence in the county from which to draw grand or petit jurors. The defendant's counsel then offered to prove the facts alleged in the objections. The district attorney thereupon admitted that the persons summoned and called were selected in pursuance of chapter 532 of the Laws of 1881 and were drawn from the box therein designated as the petit jury box, and that they were not selected under the provisions of the Revised Statutes. He also admitted that said act of 1881 was not reported to the Legislature by any commissioners to revise the statutes as required by section 25 of article 3 of the Constitution. The court, thereupon, overruled the objections of the defendant and his counsel to swearing and impanneling such persons as the grand jury, and the defendant excepted. The persons thus selected, summoned and called, were then sworn as grand jurors under the objections aforesaid and the defendant excepted. Such persons thereupon entered upon the discharge of the duties of a grand jury, and subsequently presented the indictment in question against the defendant. A verified special plea was thereupon presented and filed in behalf of the defendant, setting forth the same facts and objections as above, to the constitution of the grand jury. The same plea was filed, on the arraignment of the defendant as an answer to the indictment. The district attorney admitted all the facts as alleged in the special plea, to be true. The court then ruled and decided "that the objections of the defendant are not well founded on the facts, and are not authorized in law, and are overruled;" and the defendant excepted.

Defendant then moved, upon the facts as thus alleged and admitted, to set aside the indictment, as being found by a body of men not legally organized as a grand jury, and therefore not a legal indictment. The court denied the motion, and the defendant excepted.

Defendant then moved to quash the indictment on the

facts appearing in the record as conceded by the district attor-ney, which was also denied and the defendant excepted.

The court then ordered the defendant to plead to the indictment, to which he objected on the same grounds before stated, and excepted to the decision.

A plea of not guilty was thereupon made and entered.

The defendant was subsequently tried at the Oyer and Terminer and found guilty. He was sentenced to confinement in the Clinton state prison for the term of five years.

The conviction was affirmed at the General Term, but no opinion was written.

Further facts appear in the opinion of the court.

*Parker & Countryman* (*E. Countryman*, of counsel), for defendant, appellant.*

I. The rulings of the court in reference to corroborating the testimony of the accomplices were erroneous.

An accomplice is one who has been concerned with others in the commission of crime, whether his guilt is in the same degree with theirs or not. Lindsay *v.* People, 63 *N. Y.* 153; Davidson *v.* State, 33 *Ala.* 350, 354; Polk *v.* State, 36 *Ark.* 117, 126; Barnard *v.* State, 42 *Tex.* 260, 263.

The corroborative evidence must be of some material fact, which taken by itself, independently altogether of the evidence of the accomplice, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it. *Code Crim. Proc.* § 399; People *v.* Courtney, 28 *Hun,* 589, 592; 1 *N. Y. Crim. Rep.* 64, 556; Coleman *v.* State, 44 *Tex.* 109, 111; People *v.* Haynes, 55 *Barb.* 450, 457; Childers *v.* State, 52 *Ga.* 106, 111–113; Frazer *v.* People, 54 *Barb.* 306, 309; State *v.* Graff, 47 *Iowa,* 384; Watson *v.* Commonwealth, 95 *Penn.* 418, 424. The rule requires more than such evidence as merely created a suspicion of guilt. " There is a wide differ- ence between evidence which tends to satisfy an intelligent jury

---

* Elaborate points as to the constitutionality of the law, L. 1881, ch. 532, were presented on both sides, but the court held that the present appeal was governed on the question by People *v.* Petrea, 92 *N. Y.* 128; 1 *N. Y. Crim. Rep.* 198, 233.

that the accused has perpetrated a crime, and such evidence as merely tends to raise in the minds of the jury a suspicion of guilt." People *v.* Williams, 1 *N. Y. Crim. Rep.* 336, 358; McCalla *v.* State, 66 *Ga.* 346 ; Morrison *v.* State, 14 *Neb.* 527; " Before the jury can consider the evidence of an accomplice as a factor in the problem of guilt or innocence, they must first determine that the other evidence heard, proves the existence of corroborative facts, for without their existence a conviction might be had upon the evidence of the accomplice alone. If the evidence claimed to be corroborative does not tend, when its truth is admitted, to this end, it is the duty of the court to exclude it, and to direct an acquittal." Craft *v.* Commonwealth, 80 *Ky.* 349, 351, 352; People *v.* Ames, 39 *Cal.* 403. Where the fact proven or corroborated is consistent with innocence it cannot be accepted as any proof of guilt. People *v.* Courtney, *supra ;* Ormsby *v.* People, 53 *N. Y.* 472, 475 ; Frazer *v.* People, 54 *Barb.* 306, 309. " If the case.is to be strengthened by corroborating proof, the rights of the accused should not be prejudiced by confirmation on immaterial points, or as to facts which in no way connect him with the offense." People *v.* Haynes, 55 *Barb.* 450, 457, 458 ; Commonwealth *v.* Holmes, 127 *Mass.* 424.

II. The court erred in permitting the district attorney to read to the jury from the opinion of the Court of Appeals in Lindsay *v.* People (63 *N. Y.* 157–8), and discussing at length the facts and rules recognized in that case relating to the corroboration of accomplices as applicable to this case.

The Lindsay case was decided before the adoption of the Code of Criminal Procedure, which changed the rule as recognized in that case.

The jury were, therefore, liable to be misled and controlled by that decision as to what other evidence was requisite to corroborate the accomplices. The learned presiding judge seems to have supposed that he was entirely helpless to prevent this improper course of procedure. But this was a misapprehension. " As a general rule, the practice of allowing counsel in either a civil or a criminal action, to read law to the jury, is objectionable and ought not to be tolerated. Its usual effect is to confuse rather than to enlighten the jury." People *v.* An-

derson, 44 *Cal.* 65, 70 ; Tucker *v.* Henniker, 41 *N. H.* 318 ; Franklin *v.* State, 12 *Md.* 236 ; Murphy *v.* State, 6 *Ind.* 490 ; Davenport *v.* Com., 1 *Leigh,* 588 ; Delaplaine *v.* Crenshaw, 15 *Gratt.* 458 ; Rolf *v.* Rumford, 66 *Me.* 564 ; Ferguson *v.* State, 49 *Ind.* 33 ; Coble *v.* Coble, 79 *N. C.* 589 ; Tuller *v.* Talbot, 23 *Ill.* 299, 304 ; Sprague *v.* Craig, 51 *Ill.* 289 ; Berry *v.* State, 10 *Ga.* 512, 522 ; Bullock *v.* Smith, 15 *Id.* 396 ; State *v.* Williams, 65 *N. C.* 506.

III. The court erred in receiving in evidence the declaration of the accomplice Jones, to Nugent, his assistant, in the absence of Hooghkerk, to the effect that the latter was engaged in the "business of burning barns" and in permitting the District Attorney to inflame and prejudice the jury against the defendant by referring to this "business of burning barns" as "a recognized calling and industry of this man," and "that Jones knew about this ; knew Nugent was in the business ; knew the defendant was in the business, and that he could approach him fearlessly and openly about it." When the motion was made to strike out the evidence the judge remarked that he would "retain it for the present," but that the "motion was good unless it was connected in some way." If, by this, the court meant to be understood that it was necessary that the declaration should be communicated to Hooghkerk to render it proper, such communication was not proved. The witness immediately proceeded to state that he only "told Hooghkerk that Jones wanted to go with him in the burning of his barn."

The evidence was incompetent as the mere declaration of a third person, and not a part of the *res gestæ.* Greenfield *v.* People, 85 *N. Y.* 76, 86, 88 ; People *v.* Davis, 56 *Id.* 96, 101–2 ; Hobby *v.* Hobby, 64 *Barb.* 277. It was not admissible as the declaration of a co-conspirator. The conspiracy had not then been formed. It had not, at that time, ever been suggested to Hooghkerk. Ormsby *v.* People, 53 *N. Y.* 472 ; Hubbell *v.* Meigs, 50 *Id.* 486 ; People *v.* Gorham, 16 *Hun,* 93 ; Osborn *v.* Robbins, 7 *Lans.* 44. Even if the conspiracy had then existed, the declaration was incompetent, as it related merely to past transactions of Hooghkerk, and had no connection with the particular enterprise then in hand. N. Y. Guar. & Ind. Co. *v.* Gleason, 78 *N. Y.* 504, 515 ; Greenfield *v.* People, 85 *Id.*

76, 88; People *v.* Davis, 56 *Id.* 96, 103; Baird *v.* Mayor, 31 *Hun,* 44. It was also improper as evidence merely of other crimes having no connection with the particular crime charged against him, nor any legitimate bearing on any of the issues then on trial. N. Y. Guar. & Ind. Co. *v.* Gleason, *supra;* People *v.* Schweitzer, 23 *Mich.* 301; People *v.* Corbin, 56 *N. Y.* 363; Coleman *v.* People, 55 *Id.* 81, 82; Carncross *v.* People, 1 *N. Y. Crim. Rep.* 518. And it was error to allow the District Attorney to advert to such alleged former crimes or business of firing buildings to inflame the minds of the jury. Martin *v.* Orendorf, 22 *Iowa,* 504; Yoe *v.* People, 49 *Ill.* 410; Coble *v.* Coble, 79 *N. C.* 589; Ferguson *v.* State, 49 *Ind.* 33; Rolf *v.* Rumford, 66 *Me.* 564; People *v.* Mitchell, 62 *Cal.* 411.

IV. The court erred in permitting the District Attorney to prove that Hooghkerk had, on a prior occasion, had a stable burned, which had been insured; which had been rebuilt and sold to a Mr. Clark, and then burned again, Hooghkerk having a mortgage of $500 on it, and insurance payable to him, as mortgagee, for that amount. Also, in receiving evidence that Hooghkerk had sold horses to one or two other persons whose stables had been burned. And the District Attorney, upon this evidence, was improperly permitted to excite the passions of the jury against the defendant, as follows: "Even whenever he sells the horses they carry destruction with them; they go as lighted torches into the other stable that he sends them to with his friends. Do you believe him? Would not those things have some bearing with you?" etc.

This evidence "did not legitimately tend to impair the credibility of the prisoner as a witness, and was not competent for any purpose." People *v.* Crapo, 76 *N. Y.* 288, 290, 292; People *v.* Brown, 72 *Id.* 571, 573; People *v.* Gay, 7 *Id.* 378.

*D. Cady Herrick,* district attorney for the people, respondent.—I. The objections to conversations between Jones and Nugent, because of absence of defendant are not tenable, because repeated by Nugent to the defendant; it was merely a question of the order of proof.

The questions put to defendant as to the commission of similar offenses, was proper in cross-examination as having some

bearing on the credibility of the witness. Having become a witness in his own behalf, he was subject to be cross-examined the same as any other witness, and upon the same subjects, even although the answers elicited might tend to show that he had been guilty of other crimes; and such examination is largely in the discretion of the trial court. People v. Oyer and Terminer, 83 *N. Y.* 460; People v. Casey, 72 *Id.* 393; People v. Noelke, 1 *N. Y. Crim. R.* 495.

The reading of books as a part of an argument is not improper, particularly where the portion read is merely read as illustrative. There is certainly no more impropriety in reading from a book than in repeating the same matter from memory, or in illustrating the argument by cases from the books, than by matters purely of imagination. See 13 *Moak's English Reports*, note 429 and 430.

The limits within which counsel are to be restrained is matter of discretion, and an exercise of that discretion cannot be reached and corrected by an exception. People v. Finnegan, 1 *Parker*, 147–152; Walsh v. People, 88 *N. Y.* 458–465. See also cases cited in 22 *Moak's Eng. Rep.* 742, note.

ANDREWS, J.—The indictment against the defendant Hooghkerk, was found at the court of sessions, Albany county, at the September term, 1883, by a grand jury selected in pursnance of chapter 533, Laws of 1881. Before the jury was sworn or impaneled, the defendant, who, prior to the commencement of the term, had been committed to answer to any indictment that might be found against him thereat, filed in open court a written protest or objection, under oath, against the swearing, organization or recognition by the court of the persons summoned as grand jurors, or of any of them as a grand jury, on the ground that they were not drawn or summoned as required by law. The same facts in support of the objection were presented as in the Petrea case (92 *N. Y.* 128.) The question is the same as was considered and determined in that case, except as it is affected by the consideration that in this case the objection was raised before indictment, and before the grand jury had been organized.

In the Petrea case it was held that upon the facts proved

and offered to be proved, the act of 1881 was unconstitutional, in so far as it provided for the selection of grand jurors for Albany county, for the reason that it was a local bill for the selection of grand jurors, and as such within the prohibition of article III., section 18, of the state constitution which prohibits the passage of a local bill for "selecting, etc., or impaneling grand or petit jurors." But the court further decided that a defendant might nevertheless be lawfully put upon his trial upon an indictment found by a grand jury selected under the act; that no constitutional right of the defendant was thereby invaded; that the right of the defendant to raise the objection was a matter of procedure, subject to the control of the legislature; and that the objection was not one which, by the new procedure in criminal cases, could be taken by a defendant after indictment.

The only question now open on this appeal; upon this branch of the case, is whether, under the Code of Criminal Procedure, a defendant held to answer a criminal charge, may, on the return of the grand jury list, and before indictment, take the objection which, under the decision in the Petrea case, he would be precluded from taking after indictment. If the case permits this discrimination, the objection must prevail, otherwise the case is governed by our former decision. By section 238, a challenge to the panel or any of the grand jurors is prohibited, but the section authorizes the court in its discretion to discharge the panel for causes specified, and among others "that the requisite number of ballots was not drawn from the grand jury box of the county." Section 239 authorizes a challenge to be interposed to an individual grand juror for certain specified causes. Taking the two sections together, it seems to be quite evident that section 238 was intended to confer upon the court a discretionary power to discharge the panel to be exercised upon its own volition, and in view of all the circumstances, while section 239 was intended to secure to an accused person, the right to purge the panel of one or more particular grand jurors who might be objectionable, for bias, or other specified cause.

The power conferred by section 238 is in the general interest of public justice; that conferred by section 239 is in the

particular and special interest of the person accused. The objection interposed to the panel in this case on behalf of the defendant was in the nature of a challenge to the array, and the right of a defendant to challenge the body of the grand jury because irregularly or defectively constituted, no longer exists, and we find no provision of law permitting a defendant to raise any objection to the grand jury, except an objection to individual jurors under section 239. We think the objection of the defendant to the grand jury was properly overruled. It may not be out of place, however, to express the opinion that the court, except for the fact that the grand jury which found the indictment in this case, although selected and organized after the decision in the Petrea case was selected before the board of supervisors had an opportunity to prepare a grand jury list in conformity with the general law, might very properly on its own motion have discharged the panel.

It is very unseemly that grand juries should continue to be selected under the act of 1880, after that law has been declared unconstitutional, and the omission of the board of supervisors to perform the plain duty of preparing a proper grand jury list ought not to be longer tolerated.

The other questions arise upon exceptions taken on the trial. The principal one is an exception on behalf of the prisoner to the refusal of the court to charge that there was no evidence tending to corroborate the testimony of the witnesses Jones and Nugent, who concededly by their own confession, were accomplices of the defendant in the commission of the crime charged in the indictment. The general facts relating to the alleged crime, as testified to by the accomplices, are that on and prior to January 2, 1883, Jones was lessee of a stable in the city of Albany and had procured an insurance of $500 on horses and property therein, which at the suggestion of Hooghkerk he increased to $1,000, with the understanding that Nugent was to fire the barn, for which he was to receive $100, and that the insurance money should be divided between Jones and Hooghkerk. It was a part of the arrangement that Hooghkerk should buy some cheap horses to be put in the stable in place of other more valuable horses to be removed before the fire. The fire occurred Tuesday, January 2, 1883, at about 12:50 A. M. Mon-

day or Tuesday evening before the fire Hooghkerk, as Nugent testifies, brought two cheap horses to a point near the stable, and then exchanged them for two other horses belonging to Hooghkerk, which Nugent and one Strevell, by the direction of Jones, had taken from the stable, and the horses received from Hooghkerk were taken back to the stable and were burned in the fire. One or two other cheap horses were, as the accomplices testify, also purchased by Hooghkerk shortly before the fire and placed in the stable. It is not claimed that Hooghkerk either set the fire or was present when it was set. The evidence is that it was set by Nugent, who admitted the fact.

The evidence contained in the record goes into great detail, but it is unnecessary for the present purpose to refer more particularly to the evidence of the accomplices. It is sufficient to state that if their testimony is true, there can be no question of the guilt of the defendant. On the other hand, if their testimony is excluded from the case, it is not probable that he could have been convicted, although circumstances would remain calculated to excite grave suspicion. Christopher Ferns testified he sold a horse to Hooghkerk in December before the fire for $15, and delivered it within a few days, and Hooghkerk testified that it was delivered New Years' night. John Ernzart testified to the sale of a horse to Hooghkerk two or three days before New Years for $15, and to its delivery either Sunday or Monday night before the fire. George Brown testified to a like sale a few days before New Years for $10, and that the horse was delivered to Hooghkerk on Sunday or Monday night before the fire. John Feizenbaum testified that the defendant, Hooghkerk, about January 1, 1883, in the evening, brought to his place about a mile and a half from Albany, two bay horses, with collars and blankets, and left them with him a few days and then took them away. John Strevell testified he worked for Jones at the time of the fire; that on Monday evening, the night of the fire, he went to the stable and found Jones and Hooghkerk there; that Jones brought out two bay horses and asked him to go and help Nugent exchange them; that they went with them to Washington avenue (about a block distant from the stable) and met Hooghkerk there in a carriage, with two other horses, which were

exchanged for the bay horses, which Hooghkerk took away, and that the witness and Nugent took the two horses received from him to the stable ; that he asked Jones what he was doing that Jones said, " if I (Strevell) would keep still he would give me $50," and further, " I did not want his $50, or know anything about his business, and I went home."

Nugent testified that when he saw Strevell coming, Jones was throwing the straw around the barn floor ; that he told Jones that Strevell was coming, and " Jones catched the lamp and blew it out ;" that Jones said to Strevell, " You keep still, and I will give you $50 and a suit of clothes ;" that Strevell said " he didn't want no $50, and didn't want to know nothing of his business."

It further appeared that the property in the barn was insured for $1,000. The policy was put in evidence, and it was proved that the insurance company paid the loss. Hooghkerk testified that the policy at one time was in his possession, but that it was given to him after the fire to secure a loan, and that Jones on some pretense, obtained it from him, and that he received no part of the insurance money.

The statute (*Code Criminal Proc.* § 399) declares that " a conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as leads to connect the defendant with the commission of the crime," and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances thereof. Prior to the statute the rule in this state permitted the jury to convict a defendant upon the uncorroborated testimony of an accomplice (People *v.* Costello, 1 *Den.* 83), but it was the uniform custom of judges to advise the jury that the evidence of the accomplice should be received with great caution, and it rarely happened that a conviction was had upon his unsupported evidence. The rule now embodied in the statute is substantially the rule which, before the statute, courts were in the habit of stating to the jury for their guidance, although, as has been said, it was not enforced as a rule of law. It is plain that independently of the statutory rule, corroborative evidence to have any value must be evidence from an independent source of some material fact tending to show not only

that the crime had been committed, but that the defendant was
implicated in it, and such is the doctrine of the best considered
cases.   But neither the doctrine hitherto declared by the courts,
nor the rule embodied in the statute requires that the whole
case should be proved outside of the testimony of the accom-
plice.   Such a rule would render the testimony of an accom-
plice in most cases unnecessary and would defeat the policy of
the law which permits the use of accomplices as witnesses in
aid of, and in the interest of public justice.

We think there was evidence in this case tending to con-
nect the defendant with the commission of crime charged
against him, independently of the testimony of Jones and
Nugent.   The evidence of Strevell as to what took place at
the barn in connection with the subsequent fire, leads to an
inference of an incendiary burning.   Indeed, this is the only
reasonable inference from the conduct of Jones in attempting
to bribe Strevell to keep silence, interpreted in connection with
the mysterious exchange of horses, the fire and the insurance.
The connection of Hooghkerk with the felony is not directly
shown by testimony independent of the accomplices.   But he
is shown by Strevell to have been in the immediate vicinity of
the stable shortly before the fire, engaged in the exchange of
horses under suspicious circumstances.   The fact that he pur-
chased cheap horses, which were delivered to him on Sunday
or Monday evening is established by the testimony of inde-
pendent witnesses, and is indeed admitted by Hooghkerk, and
the jury may well have discredited his explanation of these
transactions.   The testimony of Feizenbaum that Hooghkerk
brought the bay horses to his place on the night of the fire, or
about that time, confirms Strevell in part of his story, and
closely connects Hooghkerk with the transactions of the night
of the fire.   It cannot, we think, be doubted that the circum-
stances proved outside of the testimony of the accomplices
show such a relation between Jones and the defendant, and
such a sequence of events as to justify the inference not only
that the crime of arson was committed, but that Hooghkerk
was accessory to it.   The claim that Strevell was himself an
accomplice, was properly left to the jury.   The transactions he
testifies to may have aroused, and probably did arouse, his

suspicions, but it is quite evident that he was not an original party to the scheme for burning the barn, and it was for the jury to determine whether, when the transactions testified to occurred, he had any guilty knowledge of the impending crime.

The declaration of Jones to Nugent in the absence of Hooghkerk, to the effect that the latter was engaged " in the business of burning barns," was coupled with the further declaration that he told Hooghkerk " what Jones said." The court replied to the motion to strike out this evidence by saying, " I will retain it for the present. Your motion is good unless it is connected in some way." There was no subsequent motion made by the defendant in respect to this evidence. When the motion was made, it appeared that the remark of Jones was communicated by Nugent to the defendant, and the exception to the disposition of the motion at that time was not well taken.

The questions put to Hooghkerk in his cross-examination with reference to his connection with other fires and with insurance on other property burned, were admissible in the discretion of the court, as affecting his credibility, within the cases (People *v.* Casey, 72 *N. Y.* 393; People *v.* Noelke, 94 *Id.* 137; People *v.* Irving, 2 *N. Y. Crim. Rep.* 47).

There are no other questions requiring notice. We find no error in the record, and the judgment should therefore be be affirmed.

All concur.