Supreme Court—General Term—Fifth Department.

*April,* 1887.

## PEOPLE v. ELLIOTT.

### CORROBORATION OF ACCOMPLICE—EVIDENCE.

Where a fact proved or corroborated is consistent with innocence, it cannot be accepted as a proof of guilt.

The existence of intimate social relations is not a circumstance, standing alone from which participation in the guilty acts of an associate is to be presumed.

To sufficiently corroborate the testimony of an accomplice there should be some fact testified to independent entirely of the accomplice's evidence, which taken by itself leads to the inference, not only that a crime has been committed, but that the defendant is implicated in it.

The mere presence of the accused at the time and place of the crime is not in itself sufficient corroboration of the testimony of an accomplice.

A statement made long after the commission of the crime, and after he had been in frequent communication with the guilty party, that he did not do it, but that he knew who did do it, does not tend to prove the guilt of the defendant.

APPEAL by defendant, Joseph Elliott, from a judgment of the Court of Sessions of the County of Monroe, convicting him of forgery in the second degree, charged as a second offence, of May 13, 1886.

The facts appear in the opinion.

The indictment was as follows :

The Grand Jury of the County of Monroe, by this indictment, accuse Frederick Elliott, otherwise Joseph Elliott, otherwise called Joseph Riley, of the crime of forgery, second degree, charged as a second offense, committed as follows :

At a court of General Sessions of the Peace, held at the court house, in the city and county of New York, on the 21st

day of February, in the year one thousand eight hundred and seventy-eight, in and for the city and county of New York aforesaid, by and before the Hon. John K. Hackett, Recorder of the city of New York ; the said the Hon. John K. Hackett, Recorder of the city of New York, then and there having full power and lawful authority to hold the said court, one Frederick Elliott, was duly convicted of having on the 2d day of January, in the year one thousand eight hundred and seventy·seven, with force and arms at the first ward of the city of New York, in the county of New York aforesaid, feloniously, falsely made, forged and counterfeited, and caused and procured, to be falsely made, forged a counterfeited, and willingly act and assist in the false making, forging and counterfeiting a certain instrument and writing to wit : an order for the payment of money of the kind commonly known as a bank check, which said false, forged and counterfeited bank check is as follows, that is to say :

No. 1289.                                      NEW YORK, Jan. 2, 1877.
                        UNION TRUST CO., OF NEW YORK,
     $64,225.                            Pay to the order of George L. Maxwell, sixty-four thousand two hundred and twenty-five dollars.
     $64,225.                                  MORRIS FRANKLIN,
          WILLIAM H. BEERS,                              President.
                        Actuary.

with intent to injure and defraud the Union Trust Co., of New York, and divers other persons, to the grand jury aforesaid unknown, against the form of the statute in such case made and provided and against the peace of the people of the State of New York and their dignity, and thereupon being duly and legally convicted as aforesaid of the felony aforesaid, on the said twenty-first day of February, in the year one thousand eight hundred and seventy-eight, the said Court of General Sessions of the Peace, holden by Hon. Henry A. Gildersleeve, Judge of said Court of General Sessions, did thereafter and on the thirteenth day of November, in the

year last aforesaid, at the said city and county of New York, order, adjudge and determine that the said Frederick Elliott be confined at hard labor in the State Prison for the term of four years ; by reason of the premises, which said sentence was executed upon the said Frederick Elliott, and he was thereafter, and heretofore, duly and legally discharged therefrom, and the said conviction still remains in full force and virtue.

And the Grand Jury aforesaid do further present :

That the same identical Joseph Elliott, otherwise called Frederick Elliott, otherwise called Joseph Riley, after having been so convicted as aforesaid, and after having been discharged from such conviction, according to law, upon the expiration of his said sentence, to wit: wit: on the 10th day of August, in the year one thousand eight hundred and eighty-five, at the city of Rochester, in the county of Monroe aforesaid, feloniously did falsely make forge, alter and counterfeit a certain written instrument, purporting to be the act of another, to wit : of Alexander A. Trottier and Robert Terroux, they being then and there cashier and teller respectively, of the banking house and institution known as La Banque du People, or the Bank of the People of the City of Montreal, in the Dominion of Canada, and having authority as such officers to issue and execute the drafts and bills of exchange of said bank, which said forged, altered and counterfeited written instrument, is in the words and figures following, to wit :

No. 12168.                     LA BANQUE DU PEOPLE.
$3,900,00.                     MONTREAL, Aug. 10, 1885.
                    Pay to the order of George Edwards,
Thirty-Nine Hundred Dollars.
                              A. A. TROTTIER, Cashier.
                              R. TERROUX, Teller.
To the NATIONAL BANK OF THE REPUBLIC, NEW YORK.

And the said Frederick Elliott, otherwise called Joseph Elliott, otherwise called Joseph Riley, feloniously did then

and there falsely make, forge, alter and counterfeit the said instrument, with intent then and there to injure and defraud said " Banque du People " the same being then and there a corporation and banking institution, duly organized and existing under and by virtue of the laws of the Dominion of Canada, and said National Bank of the Republic of New York city and the Flour City National Bank of said City of Rochester, they being then and there corporations duly organized and existing under and by virtue of the laws of the United States and State of New York, and divers other persons to the Grand Jury aforesaid unknown, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York, and their dignity.

## SECOND COUNT.

And the Grand Jury of the county of Monroe aforesaid, by this indietment further accuse the said Frederick Elliott otherwise called Joseph Elliott, otherwise called Joseph Riley of the crime of forgery in the second degree, charged as second offense committed as follows :

The said Frederick Elliott, otherwise called Joseph Elliott, otherwise called Joseph Riley, after having been convicted, sentenced to imprisonment and duly discharged therefrom as in the first count of this indictment, as set forth on the 10th day of August, in the year of our Lord one thousand eight hundred and eighty-five, at the city of Rochester, in this county, feloniously did utter, offer, dispose of and put off as true a certain false, forged, and altered and counterfeited written instrument, purporting to be the act of another, to wit : of the banking house and institution known as The Bank of the People, or La Banque du People of the City of Montreal, in the Dominion of Canada, then and there being a corporation and banking institution duly organized and existing under and by virtue of the laws of the Dominion of Canada and of Alexander A. Trottier and Robert Terroux, cashier and teller respectively of said bank, which said forged,

altered and counterfeited written instrument, is in the words and figures following, to wit :

No. 12168.                     LA BANQUE DU PEOPLE,
$3,900,00                         MONTREAL, Aug. 10 1855.
                    Pay to the order of George Edwards,
Thirty-Nine Hundred Dollars.
                                   A. A. TROTTIER, Cashier.
                                      R. TERROUX, Teller.
To the NATIONAL BANK OF THE REPUBLIC, NEW YORK.

And then and there having and bearing upon the back thereof the endorsement following, to wit : "George Edwards." With intent then and there to injure and defraud the said La Banque du People and the said National Bank of the Republic of New York city and the Flour City National Bank of the City of Rochester aforesaid, the said last two mentioned banks being then and there corporations duly organized and existing under and by virtue of the Laws of the United States and this state ; and divers other persons to the Grand Jury aforesaid unknown, he, the said Frederick Elliott, otherwise called Joseph Elliott, otherwise called Joseph Riley, then and there knowing the said written instrument to be forged, altered and counterfeited, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

*P. Chamberlain, jr.*, and *Henry C. Allen*, for defendant, appellants.

*Geo. A. Benton*, district attorney, for the people, respondents.

BARKER, J.—The general facts upon which the people relied for the purpose of establishing the guilt of the prisoner were testified to by George Edwards, who was, as he admitted, an accomplice in committing the forgery. The principal question presented arises on an exception taken on behalf of

the prisoner to the refusal of the court to instruct the jury that there was no evidence in the case tending to connect him with the offense charged in the indictment except the evidence of the said accomplice.

The instrument forged purported to be a draft, drawn by the People's Bank of Montreal, on the National Bank of the Republic of the city of New York, dated August 10, 1885, for the sum of $3,900, payable to the order of George Edwards. This paper the said George Edwards had in his possession in the city of Rochester, on the 14th day of August, and on that day, in the said city, he indorsed the same with his own name and caused it to be presented to the Flour City Bank for collection, the proceeds to be credited to his account with that bank. The bank immediately forwarded the same for collection and credited Edwards' account with the amount thereof and on the next day Edwards drew out the proceeds, on his own check, which was paid him in currency. The forgery, and the active and guilty participation of Edwards in the crime, was proven by the evidence of other witnesses than himself.

The single question we have to discuss in disposing of the exception now under consideration is, does the evidence given by other witnesses than the accomplice " tend to connect the defendant with the commission of the crime " charged in the indictment. The corroboration of the accomplice required by the statute is not sufficient " if it merely show the commission of the crime or the circumstances thereof." (Section 399 of Code of Crim. Pro.)

The story of Edwards as to the scheme planned by himself and the defendant as to the forgery and as to the mode and manner of putting the paper in circulation is, as stated by him in his evidence, substantially as follows : " That he and the defendant were acquaintances and resided in the city of New York. That a few days before the draft was presented and negotiated at the bank, the defendant proposed that they go to Rochester and open an account with some one of the banks in that city and draw money against it, and it was ar-

ranged that they should travel to that place by different routes and meet at the post-office in that city the next day, which they did. That the defendant directed him to open an account in the witness' name in the Flour City Bank and the German American Bank, and pointed out to him the location of each, and supplied him with $400 or $500 in currency, with which to make a deposit, which he did with each of the said banks, representing to the officers that he was about to establish a commission business in the city. That he rented an office and secured an office boy. He further testified that within a few days thereafter Elliott handed him the draft in question and directed him to deposit it in the Flour City Bank, and after indorsing the same he handed it to the office boy who took it to the bank for that purpose. That the defendant then furnished him with another draft, similar in all respects to the one deposited in the Flour City Bank, with directions to deposit the same in the German American Bank, which he also indorsed and sent the same to that bank by the boy for deposit. That on the next day he drew out of the Flour City Bank, on his own check, the proceeds of the draft in currency, and immediately met the defendant on the street near the bank and divided with him the money, and that he then sent his check by the boy to the German-American Bank, to draw out the proceeds of the draft, which had been left with that bank the day before, but the bank declined to pay the check, and on being so informed he and the defendant at once left the city.

By this evidence of the accomplice it appears that every act done in connection with the forgery of the draft and its discount by the Flour City Bank, together with the receipt and division of the avails, was done and performed in the city of Rochester within the period of two days. There is no pretense that any act connected with the consummation of the crime was done elsewhere or participated in by other persons. It is clear, if the story of the accomplice is true, the defendant's guilt is established. It is also legally clear and conclusive, if his evidence is excluded from the case, there

would be a want of sufficient evidence to establish the defendant's guilt. We thus have presented a case which requires careful consideration and a close examination of the evidence given by the witnesses other than the accomplice, for the purpose of ascertaining if such evidence tends to connect the defendant with the commission of the crime, so as to satisfy the rule of evidence laid down by the statute. Prior to the statute, the rule in this state permitted the jury to convict a defendant on the uncorroborated evidence of the accomplice, but it seldom happened that an accused person was convicted upon such unsupported evidence.

Yet as there was no rule of law declaring that an accused person should not be convicted upon the unsupported evidence of an accomplice, it sometimes happened that convictions did take place on this class of evidence alone, and they were sustained by the courts on the review. To prevent convictions upon the uncorroborated evidence of an accomplice the legislature enacted the statute. The statute indicates the nature and extent of the corroborative evidence necessary to be produced by the people so as to make a case for the consideration of a jury, whether or not they will believe the accomplice. The rule now embodied in the statute is substantially the rule which, before the statute, courts were in the habit of stating to the jury for their guidance, although, as has been stated, it was not inforced as a rule of law. *People* v. *Houghkerk*, 96 N. Y. 149; 2 N. Y. Crim. 202. In these cases the court remarked that " It is plain that independently of the statutory rule corroborative evidence, to have any value, must be evidence from an independent source of some material fact tending to show not only that the crime has been committed, but that the defendant was implicated in it, and such is the doctrine of the best considered cases. But neither the doctrine hitherto declared by the courts, nor the rule embodied in the statute " requires that the whole case should be proved outside of the testimony of the accomplice."

Chief Justice Baron Joy, in his treatise on the evidence of accomplices, page 98, after reviewing the case says : " The

only rule, therefore, which has the appearance of reason to support it, is that which I have endeavored to show, as uniformly and without an exception laid down and acted upon by the English judges, which is, ' That the confirmation ought to be in such and so many parts of the accomplice's narrative as may reasonably satisfy the jury that he is telling the truth,' without restricting the confirmation to any particular points and leaving the effect of such confirmation to the considera-·tion of the jury aided in that consideration by the observations of the judge."·

Mr. Greenleaf, in his work on Evidence, volume 1, section 381, lays down the rule that it is " essential that there should be corroborating proof that the prisoner actually participated in the offense."

In Roscoe's Criminal Evidence, 122, the rule is stated as follows : " That there should be some fact deposed to, independent altogether of the evidence of the accomplice, which taken by itself leads to the inference, not only that a crime has been committed, but that the prisoner is implicated in it."

By this rule confirmation of the accomplice's story as to wholly immaterial matters and the details and circumstances connected with the participation of the crime was insufficient, and it is now so expressly declared by statute. *Linsday* v. *People*, 63 N. Y., 143.

The several facts proved by the people, which are claimed to be in corroboration of the story of the accomplice, are wholly separate and distinct in their character, having no legitimate connection with each other and may be best separately considered. It was shown by the evidence of other witnesses that during the time the accomplice was in Rochester the defendant was also in the city in company with other persons, and that he registered at the hotel where he was a guest under an assumed name. But there is no evidence, aside from that of the accomplice, that he and the defendant were at any time in company together in the city, or that either saw the other. The witnesses who saw and conversed with the prisoner do not pretend that they ever saw Edwards

in Rochester. The witness, Henry B. Hathway, president of the Flour City Bank, who states that he saw both the prisoner and Edwards in the city, does not pretend that he saw them together at any time or place during the few days that Edwards was in the city. Other witnesses testified that on a Sunday, at Charlotte, a pleasure resort some ten miles from the city, they saw Edwards and the prisoner together, and the latter introduced Edwards to a female who was the prisoner's companion at that time and place. However suspicious these circumstances may be that the prisoner was at Rochester and in the vicinity for the purpose of aiding and abetting Edwards in accomplishing the crime which he succeeded in consummating, they are not such as legitimately tend to prove that the prisoner did or aided in doing either of the acts which was necessary to be done, in drawing up the forged draft and putting it in circulation, or that he shared in the division of the money procured from the bank thereon. The meeting of Edwards and the prisoner at Charlotte was before the draft was presented to the bank.

It is a general rule of evidence and of uniform application, that where the fact proved or corroborated is consistent with innocence, it cannot be accepted as any proof of guilt. The existence of intimate social relations is not a circumstance, standing alone, from which participation in the guilty acts of an associate is to be presumed, because it is consistent with entire innocence.

In Courtney's case reported in the 28 Hun, 589; 1 N. Y. Crim. 64, the defendant was convicted of the crime of forgery. Barton, the accomplice, testified to facts and circumstances which, if true, established his guilt. For the purpose of corroborating Barton's evidence and to connect Courtney with the forgery, the people proved by other witnesses, that they were acquaintances and associated together every day for a fortnight, at about the same time the crime was committed and that a few minutes after the forged check was deposited in the bank they were seen together on the street near the bank building. The trial court held that this evi-

dence tended to connect the prisoner with the crime and left it for the jury to say whether they would believe the accomplice or not. The general term of the first department were of unanimous opinion that the corroboration was not of the character which the Code demands and that it did not tend legitimately to connect the defendant with the offense.

The evidence relied on as corroborative in the case now before us is of the same class and character as that which was produced in Courtney's case, and it is only different in attending circumstances. Mr. Hathaway, president of the bank, to whom Edwards introduced himself and arranged to open an account in the bank, testified that he saw the defendant in the police office in Rochester after he was arrested, and then added, " and I think I have seen him once in the bank." If this evidence is sufficient to establish the claim made by the people that the prisoner was at some time in the bank, it does not state any fact or circumstance connected with his presence there indicating that he was implicated with the forgery. The time when he was there is not given, and it cannot even be said that it was during the time that Edwards was in the city planning and scheming to procure money from the bank by means of forged papers.

The further evidence upon which the people relied as tending to connect the prisoner with the crime is in the nature of a confession made by the prisoner to the public officer while under arrest, that he knew who committed the forgery. The defendant was arrested in the city of New York on the 18th day of March, 1886, by John C. Hayden, a detective, and while on the cars from New York to Rochester they had a conversation together and Hayden's evidence is as follows: " Elliott asked me if I had anybody in Rochester under arrest. I asked him why. He said he wanted to know; that there must be somebody had done some talking. Further I asked why he didn't get the money at the German American bank, that he might just as well have got that there as at the Flour City. He said, ' Is that what you want me for.' I said ' Yes.' He said, ' If that is what you want me for I

can show that I am not the party if you want me for getting the money there;' and he asked me how they described the man and he said he would stand up in any place with whiskers on or off, and see if they could identify him as the man who had put the money there." I said I thought possibly they could identify him as the man, and he said 'No, you are mistaken, I didn't do it, but I know who did it,' and then Wilkes, who was also under arrest and in charge of the same officer said, 'No, you are mistaken, he is not the man who put the draft down there and got the money unless Joe '—the prisoner—'has lied to me.' That is about all that was said. He was talking on other subjects coming up and quite jolly."

The most that can be deduced from the evidence is an admission by his prisoner to the effect that he knew who committed the forgery and was informed as to some of the plans and devices used by Edwards to deceive the bank and that money had been procured from the bank on a forged draft. But there is no fact confessed from which it can be fairly inferred that the prisoner did any act connected with the transaction or that he was aware that a crime was meditated by Edwards or any one else, and the admission is consistent with the position that all information that he had upon the subject was acquired after the crime was consummated. The time of the conversation related by the detective officer was months after the crime had been consummated and its commission known to the public. Moreover, it appears by the people's evidence that the prisoner and Edwards were frequently together after the forgery and he had an opportunity to learn from the latter of its commission and the incidents and circumstances connected with the delivery of the draft to the bank and procuring the money thereon. The prisoner does not state that he had personal knowledge as to who the guilty party was, or that he had personal knowledge of the doing of any of the acts necessarily involved in the consummation of the crime, and the admission is consistent with the idea that the statement was based upon knowledge and in-

formation communicated to him by others. The admission, such as it is, is accompanied by his denial that he did the act charged upon him, and the whole statement must be taken together in considering the same as evidence against the prisoner. I am utterly unable to see how this evidence tends to prove any fact going to show that the defendant had any agency in committing the forgery. All the evidence presented by the people, aside from that given by the accomplice, is consistent with the defendant's innocence. The only particular in which the accomplice is corroborated is in the proof showing that a crime had been committed, but the statute declares that the proof of the commission of the crime is not sufficient corroboration of the accomplice to support a conviction on this evidence.

I am of the opinion that the judgment should be reversed and a new trial granted.

P. SMITH. P. J., and HAIGHT and BRADLEY, JJ., concur.

Judgment reversed, new trial granted, and proceedings remitted to the court of sessions of Monroe county.

NOTE.—The question of the corroboration necessary to the evidence of an accomplice has been considered in the several cases cited in this series. See *People* v. *Ryland*, 1 N. Y. Crim. 123 ; affirmed 2 N. Y. Crim. 441 ; *People* v. *Williams*, 1 N. Y. Crim. 336 ; *People* v. *Thompson*, 3 N. Y. Crim. 562 ; *People* v. *Everhardt*, 5 N. Y. Crim. 91.

In cases of abduction, while the abducted female must be corroborated by other evidence (Penal Code, § 283), she is not an accomplice, and *it seems* the "other evidence" necessary may be given by the accomplice of defendant. *People* v. *Powell*, 4 N. Y. Crim. 585.

The purchase of liquor illegally sold, is not an accomplice. *People* v. *Smith*, 1 N. Y., Crim. 72 ; nor is one, for the purpose of detecting and preventing a sale in violation of law, purchases a lottery-ticket ; nor are detectives employed to get evidence of the commission of the offense. *Berry* v. *People*, 1 N. Y. Crim. 53, affirmed 1 N. Y. Crim. 57.