(14 Misc. Rep. 31.)

### PEOPLE v. SEBRING.

#### (Court of Oyer and Terminer, Steuben County. May, 1895.)

1. INDICTMENT—SETTING ASIDE—AFFIDAVIT.

    An indictment will not be set aside on the affidavit of defendant, made on information and belief, without stating the sources of the information, that incompetent testimony was given before the grand jury, and that there was not sufficient evidence to warrant an indictment.

2. SAME—EVIDENCE BEFORE GRAND JURY—TESTIMONY OF CONVICT.

    An indictment found on the testimony of persons convicted of felony, who were brought from the penitentiary on a habeas corpus ad testificandum, notwithstanding the provision of Code Civ. Proc. § 2011, that the writ shall not issue to bring up such persons, will not be set aside on that ground, since a convict is a competent witness (Code Civ. Proc. § 832; Pen. Code, § 714), and the fact that a writ of habeas corpus was wrongfully issued to bring such convicts from the penitentiary could not be objected to by defendant, but only by the warden of the penitentiary.

3. HABEAS CORPUS AD TESTIFICANDUM—POWER TO ISSUE.

    The supreme court has inherent power to issue a writ of habeas corpus ad testificandum.

4. WITNESS—PRIVILEGE—CRIMINATING QUESTIONS.

    Defendant was indicted for forging a note which he had paid and taken up before the indictment was found. He was served with a subpœna duces tecum to produce the note before the grand jury, but before the return of the subpœna he voluntarily, at the request of the district attorney, surrendered the note, and it was put in evidence before the grand jury. *Held,* that defendant, by surrendering the note, waived his right to withdraw it from evidence.

5. GRAND JURY—DIVIDING COUNTY INTO JURY DISTRICTS.

    Under Laws 1881, c. 374, dividing the county of Steuben into jury districts, the grand jury of each court is properly selected from the towns in the jury district in which that court is held, though the statute does not provide, in terms, that the grand jury shall be so drawn.

**6. INDICTMENT—DUPLICITY.**

An indictment which, in the same count, charges defendant with uttering a forged note and with procuring a third person to forge the note, is defective, under Code Cr. Proc. § 278, as charging two crimes.

James O. Sebring was indicted for forgery, and he moves to set aside the indictment, and demurs to the second count of the indictment. Motion denied. Demurrer sustained.

W. W. Clark, Dist. Atty., for the People.
John F. Little and F. A. Williams, for defendant.

RUMSEY, J. The questions which are presented upon the motion to set aside the indictment will be considered in the order in which they are summarized in the brief of the counsel for the defendant. It may be said, however, before considering these questions separately, that the affidavit of the defendant as to what occurred before the grand jury, except so far as it is within his personal knowledge, cannot be accepted and acted upon upon this motion. He states, upon information and belief, that no other witnesses than Folsom and Daniels were examined, that incompetent testimony was given before the grand jury, that immaterial matters were allowed to be sworn to before the grand jury, and that there was not sufficient evidence to warrant an indictment. These statements upon information and belief are not supported by the testimony of anybody. The sources of the information are not given, and there is nothing in the case from which any of these facts can be said to be established. If the defendant had been informed as to these facts in such a way that a careful man would swear to their existence, he certainly would have been able either to produce the affidavit of the person who gave him the information, or to state what information he had received, so that there might have been at least some shadow of reason for supposing that he had some information on the subject. But nothing of that kind is done. It would be an extraordinary thing to set aside an indictment because the defendant alleged, in a general way, that he did not believe he ought to have been indicted. And that, it may be said, is all that this affidavit amounts to. Neither does the affidavit afford any sufficient reason for requiring the production of the testimony taken before the grand jury. The belief of the defendant, based upon alleged information, which he does not reveal, can never be sufficient to warrant a finding that there were improprieties or irregularities before the grand jury, or a lack of evidence to support their finding. With these preliminary observations, the particular objections made to the indictment, and which are established by the evidence, will be discussed.

The first complaint is that Folsom and Daniels, two persons who were imprisoned in the state prison upon a conviction for felony, were brought from state prison to Corning, and sworn before the grand jury. That these people were competent witnesses, cannot be denied. Whatever may have been the rule of the common law, that rule has been entirely and thoroughly abolished in this state, and a convict is just as competent as any other person to testify in any

civil or criminal proceedings. Code Civ. Proc. § 832; Pen. Code, § 714. This competency is not limited in any way. The law does not say that a convict is a competent witness if he is properly subpœnaed, or if he is brought before the court by the proper process, or in a proper place, but his competency is as absolute as that of any one else. It follows, therefore, that the testimony of Folsom and Daniels was perfectly competent, unless there was something in the manner in which they were brought before the grand jury which took away their competency.

It is said by the defendant that the court had no power to issue the writ of habeas corpus to bring them from the state prison to testify on these proceedings before the grand jury. Code Civ. Proc. § 2011. The power of the court to issue a writ of habeas corpus to bring up a prisoner to testify in a proceeding pending before it did not come into existence by virtue of any statute of this state, but it was an original power inherent in the courts. Whart. Ev. § 384. It was exercised in England, and the supreme court has, by statute and by provisions of the constitution, the same power in that regard that was exercised by the court of king's bench before 1776. The power to issue a writ of habeas corpus to bring up a witness to testify is regulated by Code Civ. Proc. § 2008 et seq., and one of those sections prescribes that the writ shall not be issued pursuant to those sections in certain cases therein mentioned. It is very doubtful whether section 2011 ought to be construed as taking away the power of the court to issue the writ in a case which is not provided for in the preceding sections. Such a provision might very easily result in a serious denial of justice. For instance, if the only witness to a felony were in prison for more than five years, the right to prosecute the person guilty of it would be barred by the statute of limitations before the convict could be produced as a witness to procure an indictment. A construction which would lead to such a result as that might cause serious inconvenience, and should not be adopted unless it is absolutely necessary. Whether it be necessary, or not, need not be decided here, because it is no concern of the defendant how the witnesses were procured upon whose testimony this indictment is found. If they were competent witnesses, and gave competent testimony, he has no right to demand anything further. If the court went beyond its power in issuing the writ of habeas corpus, the warden of the prison was the only person who could take advantage of that. If he chose to obey the order, although irregular, and to produce the witnesses, no harm has come to the defendant, and it is a matter with which he has no right to concern himself.

The next objection is that the defendant was compelled to give evidence against himself. The facts bearing upon that point are as follows: The note, for the forgery of which he was indicted, had been taken up by the defendant, and was in his possession. Before the sitting of the court he was served with a subpœna duces tecum to produce that note. That subpœna was returnable on the 10th day of April. The defendant was present as a witness for the purpose of appearing before the grand jury upon a complaint made by him against another person, whom he sought to have indicted. It appears

from the testimony of the district attorney that before the return of the subpœna duces tecum he met the defendant in the street in the city of Corning, where the court was holding, and asked him for the note, which the defendant said he would willingly give him, and thereupon at once produced it to the district attorney. This was before he was asked to go before the grand jury. At the time of handing the note to the district attorney, he made a request that, if a charge against him should be presented, he might be permitted to appear and explain it, to which the district attorney consented. All this took place before he was called to appear before the grand jury, and out of court. The defendant is a lawyer, familiar with criminal practice and with proceedings before the grand jury. He knew, as everybody is bound to know, that he could not be compelled to give up the note until he had been called before the grand jury, if, indeed, he could be compelled to produce it there; and he knew that anything which he did out of court, not under the compulsion of a subpœna, was done because he saw fit to do it, and for no other reason. After the witnesses had been sworn against him before the grand jury, he was permitted to appear and to make such explanations as he saw fit to make, having been told that he need not answer any questions unless he saw fit. It is quite true that no person can be compelled to give testimony criminating himself; and it is quite probable, as suggested by the judge giving the opinion of the court in Counselman v. Hitchcock, 142 U. S. 547, 581, 12 Sup. Ct. 195, that no man can be compelled to produce his private papers to enable people to use them to convict him of a crime. The courts have been careful to enforce this rule of law, and not to permit any violation of it, however important to the interests of justice it might seem that the evidence should be given. But the law which is thus tender of the rights of accused persons does not prevent them from saying or doing whatever they may see fit by way of accusing themselves, both in court and out of court. The privilege not to give evidence is one which may be waived; and, if it is not waived, the person who permits himself to be a witness, or sees fit to produce his papers, must expect that what he says, or the papers he produces, shall be used against him, precisely as though the evidence was given or the paper produced by somebody else. Nobody would claim that if this defendant, meeting the district attorney upon the street, had admitted that he was guilty of the crime charged against him in this indictment, the district attorney might not be sworn to prove that statement, although the statement could not have been compelled after the defendant had been sworn. It is well settled that, whenever an accused person sees fit to put himself in the position of a witness, he is in precisely the same situation as any other witness, and the opposing party has the same right to cross-examine him as he would any other witness. Connors v. People, 50 N. Y. 240; People v. Tice, 131 N. Y. 651, 30 N. E. 494. If the defendant desired to insist upon his right to retain this note in his own possession, he should have refused to give it to the district attorney, and insisted that he could not be compelled to do so. As he did not choose to do that, but preferred to waive his right, and produced the paper out of court, when

he was not under the stress of subpœna, he is certainly not in a situation to say that he was compelled to produce evidence.

The next point made is that Folsom and Daniels were accomplices, and their testimony given before the grand jury was not corroborated. It might be sufficient to say, with reference to this point, that there is not one particle of evidence to sustain it. The only evidence on the subject is that of the defendant himself, who says that he is informed and believes that there was no corroboration of the testimony of Folsom and Daniels. The weight to be given to such an affidavit as that has already been considered. What other testimony was given before the grand jury does not appear. It does appear, however, that the defendant himself went before the grand jury, and told his story with regard to this charge, from which it is necessarily to be inferred that there was other evidence than that of Folsom and Daniels. The district attorney says that there was corroborating evidence, and, upon that condition of affairs, all that can be said is that there is nothing to support the statement of the defendant that no other evidence was given.

It is objected that the same charge had been submitted to the grand jury at the September term, 1894, and dismissed, and that no order was made by the court for the resubmission of the charge. The facts upon that matter very clearly appear. It appears that in September, 1894, a complaint was made to the grand jury, against Folsom and Daniels, for the forgery of this same note for which the defendant is now indicted; that several witnesses were examined upon that charge, one of them being this defendant himself. It appears that at that time both Folsom and Daniels were indicted. After the matter of this note had been disposed of, and the indictment had been found, Folsom desired to appear before the grand jury, and did go before them and make a statement. In the course of that statement he said that he was induced to forge the Bradley Layton note by the defendant here, but that statement was made long after the matter of the Bradley Layton note had been disposed of. One or two witnesses were sworn with regard to this matter after Folsom's statement, and there the matter seems to have dropped. The minutes of the grand jury do not disclose that there was any complaint made against Sebring, or that this matter was considered; and while two or three of the grand jurors, whose affidavits are produced by the defendant, say that testimony was given with regard to that charge, no one of them says that it was considered by the grand jury, or that any vote was taken upon the question of indicting him. Seventeen of the grand jurors, whose affidavits are produced by the people, testify that no charge was presented against him, and that no case was presented, or considered or acted upon by them, against him. It is very questionable whether the affidavits of the grand jury as to what occurred before them ought to have been presented, but as they were presented both by the defendant and by the people, and no objection is made by either party to the consideration, I have considered them. Considering those affidavits, the people establish, by a large pre-

ponderance of the testimony, that no charge was made against Seb-ring, and that there was no action upon it, and consequently there could be no dismissal of it. It is quite true that Folsom made some charge against him in the course of his general statement, and that, because of that statement, two witnesses were examined upon the subject. But it must be adopted as the facts of the case that there was no consideration of a charge against him, and that, consequent-ly, there was no dismissal of it. That being so, no order for a re-submission was necessary, because that is only made necessary when the charge against the person has been dismissed by a grand jury. There clearly can be no dismissal of a charge unless the grand jury considered it and took some action upon it. That was not done here.

The next point is that the grand jury was not properly organized. It appears from the testimony that there was considerable irregu-larity, to say the least, in the way in which the names of the grand jurors were selected by the supervisors. In fact, it may be said that upon the affidavits it appears that the supervisors, as a body, never acted, but that the lists presented by the several town supervisors were filed with the county clerk, and by him those names were put upon slips, and put into the grand jury boxes. It appears that he put the names of the grand jurors from the towns and cities in the Southern jury district into one box, and those from the Northern jury district in-to another. It is complained that this was an irregularity. The law dividing the county of Steuben into jury districts (chapter 374, Laws 1881) does not provide, in terms, that the grand jury of each court shall be selected from the towns in the jury district in which that court is held; but such has been the practice in the county since 1853, when the county was first divided into jury districts. During all those years, grand jurors for the courts in the Southern district have been drawn from the towns of that district; and, for the North-ern district, from the towns of that district. That practice has been well known to every judge and lawyer living in the county. The county judges presiding at the drawing of these grand jurors have been men eminent in the profession, and although hundreds of in-dictments have been found since that mode of drawing began, many of them for grave offenses, and not a few strongly litigated by emi-nent counsel who were aware of this manner of drawing grand jurors, no objection of this kind seems to have been taken. This amounts to a contemporaneous construction of the law, which is of very high authority, and it should be followed, unless the law is so plain as to imperatively require another construction. That is not the case here. I think it is proper, and it was intended, that the grand jurors for the courts in the Southern district should be drawn from the towns in that district; and, for the Northern district, from the towns in that district. It appears that, although the names of the men drawn as grand jurors were not selected by the board of supervisors, yet they were presented by the clerk of the board to the county clerk, and by him put into the box. It is conceded that all the proceedings connected with the drawing and organization of the grand jury were properly taken. That being so, I think the case is precisely within the decision of the court of appeals in People v.

Petrea, 92 N. Y. 128; and, within that case, the grand jury must be held to have been a legal body, and the indictment found by them to have been good.   The case of People v. Petrea was examined by the court of appeals in a subsequent case, and by them followed, and it must be held that it is now undoubtedly the law of this state.   People v. Hooghkerk, 96 N. Y. 149.

This disposes of all the points made by the defendant upon the motion to set aside the indictment, and the conclusion reached is that the motion must be denied.

The defendant has, however, filed, and here presents, a demurrer to the second count of the indictment, which has been presented at the same time.   The ground of demurrer is that more than one crime is charged in the second count of the indictment, to wit, the crime of forging and the crime of uttering forged paper.   The second count of the indictment, in the first place, charges the defendant with uttering a forged note, knowing it to be forged; and in the same indictment it charges that at the same time and place he counseled, induced, aided, and procured Edward R. Folsom and William J. Daniels to forge the name of Bradley Layton upon the back of the note, with intent to injure and defraud the said Bradley Layton.   There can be no doubt that this second count not only charges the uttering of a forged paper, but it charges that Sebring procured the forgery to be committed; and that amounts to charging as a principal in the crime of committing a forgery, under section 29 of the Penal Code. Section 278 of the Code of Criminal Procedure provides that the indictment must charge but one crime, and in but one form; but it is permitted, by the next section, to charge the crime in the separate counts to have been committed in a different manner, or by different means, or, where the acts complained of may constitute separate crimes, to charge the different crimes in separate counts.   Within that provision of the statute, this indictment might have charged in the separate counts the forgery of this paper by Sebring, and the uttering of the forged note, knowing it to be forged, because both are parts of the same transaction, and constitute the same crime.   People v. Adler, 140 N. Y. 331, 35 N. E. 644.   But this indictment is hardly within that case.   In that case the crime charged was forgery in the second degree, as here; committed, in the first place, by forging the paper, and in the second place, by uttering the forged paper, knowing it to be forged.   In this case the count contains something more than that.   It not only charges the defendant with uttering the forged paper, knowing it to be forged, but it charges him, also, with procuring and inducing Folsom and Daniels to forge the paper, which is also forgery in the second degree, but it is another act constituting the forgery than the uttering of the forged paper.   We have, therefore, in this second count, a charge of uttering forged paper, and also of inducing another person to commit the crime of forgery. I think that is practically the charging of two different offenses in the same count of the indictment.   To be sure, but one crime is charged in that count, to wit, the crime of forgery in the second degree; but, within the allegations of the count, that crime may be claimed by the people to have been committed either by uttering

forged paper, or by inducing Folsom and Daniels to commit the forgery. Such a mode of pleading, I think, is not permitted by the statute, and renders this count demurrable, and for that reason the defendant must have judgment upon the demurrer upon the second count. Ordered accordingly.