THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN KIEF, APPELLANT.

*What acts and statements of one Conspirator are competent against the other — evidence — record of acquittal of one of two parties indicted for murder — admissibility of it on the separate trial of the other conspirator.*

Although, during the continuance of a conspiracy, the acts and declarations of either conspirator in furtherance of the conspiracy are competent evidence against the other, the declarations of either before the formation of the conspiracy or after the consummation of the offense are not admissible.

On the trial of an issue in a criminal action, as to whether the accused aided and abetted another in the commission of the crime, a judgment of acquittal rendered upon the trial of that other person for such crime is properly rejected. (PARKER, J., dissenting.)

APPEAL by the defendant John Kief from a judgment of conviction of murder in the first degree, rendered on the 6th day of October, 1886, after a trial before the Court of Oyer and Terminer of the county of Madison.

Adelbert D. Howard died on the 17th of December, 1884, and the indictment upon which the defendant was tried charges that his death was caused by the felonious act of Carrie C. Howard and the defendant by administering to the deceased arsenic. Carrie C. Howard had a separate trial before a jury at an Oyer and Terminer held in January, 1885, and was acquitted by the verdict of the jury. The deceased was buried on the eighteenth of December, 1884. His

body was exhumed on the 7th of January, 1885, and taken to an undertaker's room in the village of Peterboro and a *post mortem* was held upon the body; and again it was returned to the grave and remained there until January twenty-third, when it was again taken up and taken to the undertaker's room and remained there four days. An inquest was held on the 28th of January, 1885, at Peterboro, and at the close of the inquest the coroner issued a warrant upon which Carrie C. Howard and the defendant were arrested and committed to jail in Morrisville. The defendant was sentenced to be executed on the 26th of November, 1886.

*Joseph I. Sayles*, for the appellant.

*H. M. Aylesworth*, district attorney, and *E. N. Wilson*, for the People, respondent.

HARDIN, P. J. :

Section 29 of the Penal Code provides as follows : "A person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime is a principal." The theory of the prosecution is that the defendant aided and abetted Carrie C. Howard in the commission of the crime of murder. She was married to the deceased in 1878, and had various differences and quarrels with him until in 1882, when she separated from him. She was induced to return to her husband by means of a transfer made of his property to her. In the month of October, 1884, defendant became an employee, and, as such, a member of the Howard family. And it is claimed that while he was thus employed he joined the wife of the deceased in a conspiracy to cause the death of her husband, Adelbert D. Howard. The evidence indicates that, from some time in the month of October, 1884, down to the time of the death of the deceased, the defendant and Mrs. Howard were much in each other's company. Together they visited Oneida, Cazenovia, Canastota, Morrisville and Clockville, and, on some occasions, drank intoxicating liquors in the hotels and saloons, she going with him in a carriage or a lumber wagon or on

loads of grain. It also appeared that he assisted her at times about the household work. It is claimed that on the 3d day of December, 1884, the defendant and Mrs. Howard went to Oneida together, a distance of about fourteen miles from the Howard farm, and that while there Mrs. Howard made a purchase of arsenic in the name of the defendant, and that a day or two after this purchase the deceased was taken ill, having all the symptoms of arsenical poison. From that affliction he apparently partially recovered, and by the evidence it appears that on the 11th of December, 1884, Kief was again in Oneida, and while there purchased an ounce of arsenic at the drug store of Dyer. A day or two thereafter Howard was again taken violently ill, having similar symptoms and somewhat aggravated. The symptoms continued to increase and he grew worse, until the night of the 17th of December, when he died. The evidence fully reveals his symptoms, which indicated arsenical poisoning; and a *post mortem* was held and an analysis made of a portion of the body by a chemist, and the results reached tend to indicate that Howard came to his death by reason of having taken arsenic in his stomach. From the testimony of Dr. William Smith, the chemist, who made an analysis of portions of the body, it appears that he found in the liver the equivalent of a grain and a half of white arsenic, and in the stomach and its contents one-eighth of a grain, and in a piece of muscle one-twentieth of a grain, and in some other portions examined by him four-tenths of a grain. It appeared by the evidence that the defendant and Carrie C. Howard were the persons who took care of the deceased during the sickness alluded to. Some evidence was given of the declarations of the defendant, tending to support the theory of the prosecution, and upon all of the evidence it is insisted, in behalf of the people, that a conspiracy had been formed to cause the death of the deceased, and that in pursuance of that conspiracy he was poisoned, and that the defendant aided and abetted in the commission of the crime. In *Kelley* v. *The People* (55 N. Y,, 566) it was said: "A conspiracy may be proved, as other facts are proved, by circumstantial evidence, and parties performing disconnected overt acts, all contributing to the same result, and the consummation of the same offense, may, by the circumstances and their general connection or otherwise, be satisfactorily shown to be conspirators and confeder-

ates in the commission of the offense." In the same case it was also held that, " where there is sufficient evidence to justify the conclusion that different persons, charged with a crime, were all acting with a common purpose and design, although it does not appear that there had been a previous combination or confederacy to commit the particular offense, yet the acts and declarations of each, from the commencement to the consummation of the offense, are evidence against the others." Following the principles just quoted, it may be assumed that the evidence was sufficient to warrant the jury in finding a conspiracy between the defendant and Carrie C. Howard to accomplish the death of the deceased, and it may be said while such a conspiracy existed, the acts and declarations of either, in furtherance of the conspiracy, were competent evidence. However the declarations of either before the formation of the conspiracy, or after the consummation of the offense, do not come within the rule.

In *New York Guaranty and Indemnity Company* v. *Gleason* (78 N. Y., 504) it was held, viz.: " Having established a conspiracy, proof of the acts, admissions and declarations of any one of the conspirators in pursuance and furtherance of the criminal enterprise, and in reference thereto, is competent. But the statement of one of them as to a past transaction accompanying no act done in furtherance of, or in connection with such enterprise, is not competent against the others." Mr. Greenleaf lays down the rule (3 Greenl. on Ev., § 94) as follows: " The evidence of what is said or done by the other conspirators must be limited to their acts and declarations made and done while the conspiracy was pending and in furtherance of their design; what was said or done by them before or afterwards not being within the principle of admissibility." This rule was stated and reaffirmed in *People* v. *Gorham* (16 Hun, 93).

In *People* v. *McQuade* (110 N. Y., 307) Judge ANDREWS, in speaking upon the subject, said: " The admission of this evidence was in contravention of the settled rule that only the acts and declarations of a co-conspirator, done in furtherance and execution of the common design, are admissible against one of the conspirators on trial for the common offense, and that when the conspiracy is at an end, and the purposes of the conspiracy have been fully accomplished, or the conspiracy has been abandoned, no subsequent act or declaration of one of the conspirators is admissible against another."

(1 Greenl. on Ev., § 111; 3 id., § 94; *People* v. *Davis*, 56 N. Y., 103; *N. Y. Guaranty, etc., Co.* v. *Gleason*, 78 id., 503.)

Nellie Laird testified that she was in the house of the Howard's on the 17th of April, 1884, and that she went with Mrs. Howard to Peterboro. She was then asked to state whether she had a conversation on that day with Mrs. Howard. The question was objected to as incompetent and improper and not evidence against the defendant. The objections were overruled and the defendant took an exception. The witness answered she had a conversation on that day, and when she was asked to state what Mrs. Howard said, similar objections were taken and overruled by the court and an exception was taken. The witness thereupon answered, viz.: "She was talking about Howard and said he misused her. He went to Syracuse in bad places and came home sick and she had to wait on him, and she said how mean he was. She said she had a mind to give him poison sometimes; she said she would if her courage hadn't failed her. I told her she wouldn't do any such thing, and she said she would." Thereupon the defendant's counsel moved to strike out this evidence as incompetent and immaterial, and that no foundation had been laid for it as against the defendant. The motion was denied and an exception was taken. The defendant was not present when this conversation took place. There is nothing in the case to indicate that a conspiracy had then been formed between Mrs. Howard and the defendant to cause the death of Howard; on the contrary, it is very apparent from the evidence that if there was any conspiracy formed between the defendant and Mrs. Howard it was formed long after this conversation. Hence we are of the opinion that the evidence was in violation of the rule which we have already stated, and that it was erroneously received.

When Simeon Reese was upon the stand, as a witness for the people, he was asked whether he heard Mrs. Howard call her husband names and when. This question was objected to and allowed, and an exception taken by the defendant. He said that in 1881 "she called him before he ate breakfast a son of a bitch, a poor-house pauper." We think her declarations on that occasion were not admissible. While David Jones was being examined in behalf of the people he was allowed to give statements and declarations made by Mrs. Howard in the summer of 1884, against the defendant's

objection and exception. By this witness' evidence it appears that he worked for the Howards from December, 1883, until the 7th of October, 1884, and that the defendant took his place, and that the defendant was there a week or ten days in the month of June. There is nothing in the testimony of this witness, or other evidence in the case to indicate that a conspiracy had been formed prior to or at the time of these declarations. We think their admission was, therefore, error.

(2.) The people put in evidence a deed executed in December, 1882, from Adelbert D. Howard to Carrie C Howard; and also a deed made by Mrs. Howard to Henry J. Mayor, dated January 21, 1885; and also a deed made by Mayor and Carrie C. Howard to the prisoner's counsel, dated January 27, 1885. Objections were taken to these records, and they were overruled and exceptions were taken to the rulings. Apparently the latter deed was given for the purpose of securing counsel for services in defending Mrs. Howard. Although the defendant may have been at the city of Rome when the latter deed was executed, the evidence nowhere discloses that he took any part in the transaction resulting in the deed. If there had been a conspiracy existing between the defendant and Mrs Howard, its purpose had been accomplished by the death of Howard on the seventeenth of December, and her act in transferring her property to her counsel on the 27th of January, 1885, apparently had no connection with the conspiracy, if one existed, prior to the death of Howard. We think the circumstance that the defendant went with her to the city of Rome, acting as a hired man or servant, on the occasion when she visited the office of her counsel and prepared the deed, did not render her act competent evidence against the defendant.

(3.) The defendant called as a witness one Elizabeth McGinnis, whose testimony was quite important for the defendant. During the cross-examination, for the purpose of impairing her credibility as a witness, she was asked to state that the farm that she and her husband lived upon joined the Howard farm, and that her husband held title to it, and that her husband had executed a mortgage upon his real and personal property. We think the inquiry into the acts of her husband in mortgaging his property were immaterial and ought not to have been received for the purpose of impairing her credibility as a witness.

(4.) We think the acts and circumstances attending the preparation of the body for burial, and what disposition was made of his clothing and ring, so far as they were known to the defendant, were correctly received in evidence.

(5.) The rule laid down by the Court of Appeals in *People* v. *Mondon* (103 N. Y., 221) seems to justify the admission of the testimony and declarations made by the defendant before the coroner. We think the rule stated in the *Mondon Case* was not departed from in *People* v. *Sharp* (107 N. Y., 427). (See, also, Code of Crim. Pro., § 395; *Hendrickson* v. *People*, 10 N. Y., 13.)

(6.) We are not persuaded that any error was committed in rejecting the record showing the acquittal of Carrie C. Howard of the crime charged in the indictment against her. (*Gelston* v. *Hoyt*, 3 Wheat., 316.)

In *State* v. *Mooney* (64 N C., 54) it was held: " Where two are indicted for a battery, the one for the act and the other for using encouraging language at the time, the wife of the one who encouraged the beating is a competent witness for the other party. The legal effect of an acquittal of the other is not an acquittal of her husband." This case cites *State* v. *Rose* (Phil., 406); *State* v. *Ludwick* (Id., 401).

Other questions were pressed upon our attention by the learned counsel for the respective parties in the argument of the case, but we do not deem it important to consider them *in extenso*, as the views we have already expressed lead to the conclusion that a new trial must be awarded.

The conviction and judgment are reversed and a new trial directed in the Court of Oyer and Terminer of Madison county, to which court the proceedings are remitted.

MERWIN, J., concurred.

PARKER, J.:

Defendant was jointly indicted with one Carrie C. Howard for the crime of murder in the first degree. The charge is: That they jointly administered poison to her husband, Adelbert D. Howard, with the design to effect his death, and that he died from the effects thereof December 17, 1884. The defendants demanded separate trials, and Carrie C. Howard having been first brought to trial, a verdict of not guilty was rendered in her behalf, and a judgment of

acquittal entered thereon. Subsequently the defendant Kief being brought to trial, a verdict of guilty was rendered against him, and judgment entered thereon, from which he has appealed to this court.

After the people rested their case, the defendant offered in evidence the record of the acquittal of Carrie C. Howard, which was excluded by the court under the people's objection that it was incompetent, irrelevant and immaterial, to which ruling an exception was duly taken by the defendant.

For this alleged error, among others, the defendant asked that a new trial be granted. One of the issues on trial was, whether the defendant did himself administer the poison by which the murder was effected. On such issue it is evident that the question, whether Carrie C. Howard was or was not guilty was entirely irrelevant. But another question in the case was, whether Kief aided and abetted her in administering the poison to her husband. If she was the only one who administered the poison, and Kief was, in fact, absent at the time and ignorant that it was then being done, yet, if he aided and abetted her in such a scheme, he was, under our present law, guilty as a principal equally with her, and the charge that *they* administered the poison would be sustained as to him.

The trial judge charged the jury to that effect, and much evidence was given on the part of the people tending to show that she committed the crime, and he aided and abetted her in doing it. On that issue it was clearly proper for defendant to give in evidence any fact tending to show that Carrie C. Howard did not commit such crime. Such a fact would clearly be relevant and material. The people proved many facts tending to show her guilty. The defendant might prove any fact tending to show her innocent. But the question is, whether the record of her acquittal was competent evidence upon the question of her guilt in favor of the defendant and against the people.

Prior to the enactment of section 29 of the Penal Code a person who merely counseled and abetted another in a scheme to commit a crime was not deemed a principal, and could not be convicted under an indictment charging him as such. (*People* v. *Katz*, 23 How., 93.) He was not considered guilty of the crime, but merely guilty as an accessory before the fact, and in order to hold him guilty as an accessory it was necessary to prove that the crime which

it was claimed he had aided and abetted had, in fact, been committed by the other party. For such purpose, and as relevant to that question, the record of conviction of the other party was held to be *prima facie* evidence against the accessory. It was not held to be conclusive evidence because the alleged accessory was not a party to it, but it was conclusive evidence that a conviction had been had, and it was *prima facie* evidence that such conviction was correct, and hence that the party had committed the crime. Neither party was, therefore, concluded by the record. The people might give additional proof to establish the guilt of the principal, and the accessory might, notwithstanding the conviction, give evidence to show that such crime had not been committed. (3 Greenl. on Ev., § 46; *Levy* v. *People*, 80 N. Y., 327; *Jones* v. *People*, 20 Hun, 545.) So a judgment of acquittal was *prima facie* evidence in behalf of the accessory upon the well-known principle that a judgment may not be used as evidence against one in whose favor it might not have been used had the decision been the other way. (*People* v. *Buckland*, 13 Wend., 592; *Case* v. *Reeve*, 14 Johns., 82; *Gelston* v. *Hoyt*, 3 Wheaton, 316, 317.)

Although the record of the principal's conviction has not been received as evidence against the accessory without considerable opposition in some courts, it seems to be thoroughly settled in this State that it is *prima facie* evidence against him; and inasmuch as such record may be used in favor of the people against one who is not a party to it, there does not seem to be any reason why it should not be used *against* the people who are a party to it. Assuming, then, that such is the rule, it would seem that the record of the acquittal of Carrie C. Howard in this case was *prima facie* evidence in favor of this defendant upon the issue last above stated. Such issue is precisely the same as if he had been on trial as accessory before the fact, viz., that he counseled and abetted Carrie C. Howard in administering poison to her husband. If she had been previously convicted, I do not see why, within the rule above stated, the record of her conviction would not have been *prima facie* evidence against him that she had committed the crime, and it would have been admissible, to prove that fact on the question of whether or not he aided and abetted her in so doing.

Now, under our Code, such an issue may arise under an indictment charging him or both as principals. Formerly it could not, but, nevertheless, in both cases it is the same issue to be tried and determined upon similar facts and controlled by the same rules of evidence. The use of the record was not merely to prove the conviction. It was the *guilt* of the principal that must be established, and not merely the fact of his conviction. (See 80 N. Y., 327.) Frequently the parties were tried together, one as principal and one as accessory, and in such cases there was no prior conviction of principal; but the jury were instructed to first decide on the evidence as to the principal's guilt, and unless he was found guilty the other was discharged. (See 20 Hun, 546.) So, also, the rule was not applicable to the trial of accessories merely. It was a rule of evidence applying to every case where the record became material to such an issue.

In the *Buckland Case* a party indicted for compounding a larceny sought to plead the acquittal of the person charged with larceny as a *conclusive* bar to his conviction. The court held that it was *prima facie* evidence only, and not conclusive. In *Maybee* v. *Avery* (18 Johns., 352), the defendant, in an action of slander justified the charge that plaintiff stole hens by the record of plaintiff's conviction for such a crime. The court held that it was *prima facie* evidence in defendant's favor, but not conclusive, and in such case Judge SPENCER says, that a verdict upon an indictment is an exception to the general rule that a judgment is evidence only between the parties or their privies, upon the same principle that when the matter in dispute is a question of public right or interest, all persons standing in the same relation as the parties are affected by it.

It seems to be the settled law of this State, that on an issue whether the accused aided and abetted another in the commission of a crime, the judgment rendered upon the trial of that other for the crime is *prima facie* evidence as to whether that other person did or did not commit the crime. Such an issue having squarely arisen and gone to the jury in this case, I conclude that the record of Carrie C. Howard's acquittal was competent evidence relevant to that issue, and that it was error to exclude it.

I concede that the acquittal of Carrie C. Howard was utterly immaterial on the question of whether defendant Kief, either alone

or jointly with her, murdered the deceased by administering poison to him. So, also, I concede that such acquittal is no bar to the conviction of Kief on this indictment. But when it is sought to hold Kief on the ground that even though he were absent and took no part in administering the poison, he is guilty if he aided and abetted her in such act, an issue is put into the case that makes the question of her guilt a material and important one, and upon such issue the record of her acquittal is *prima facie* evidence in his favor. At folios 1740–1743 of the printed case, it appears that the jury were squarely instructed that they might find Kief guilty upon that theory, if the evidence warranted it; and, therefore, both by the charge and by the evidence introduced on the part of the people, such issue was put into this case, and being in, it was error to exclude any competent evidence relevant to such issue.

Conviction, order and judgment reversed and a new trial ordered in the Oyer and Terminer of Madison county, to which court the proceedings are remitted.