DETERMINED IN THE

# FOURTH DEPARTMENT

AT

# GENERAL TERM.

## April, 1892.

THE PEOPLE OF THE STATE OF NEW YORK, Respond-
ENT, *v.* ELMER J. BOSWORTH, Appellant.

*Burglary in the third degree — accessory before the fact — corroborating an accom-
plice — when the offense is committed — a second offense should be alleged — the
conduct of the accused — the wife of an accomplice is a competent witness.*

An indictment for the crime of burglary in the third degree charged that one Elmer
Bosworth induced one Adams to commit the crime; that Adams did so, " whereby
the said Elmer Bosworth did become a principal," and it proceeded to charge
that he committed the crime:

*Held,* that, under section 29 of the Penal Code, it was proper to charge Bosworth
as a principal.

Thomas Keough, as a witness for the people, testified that he and Adams com-
mitted the crime at the instigation of Bosworth, and upon the question of
corroborating Keough the court charged that there was testimony, other than that
of Keough, which, if believed by the jury, would implicate Bosworth; that the
court submitted to the jury the questions whether this testimony was true, and
whether it was sufficient to connect Bosworth with the crime; that it was not
necessary that the corroborating testimony should itself be sufficient to show the
commission of the crime, or the connection of Bosworth with it, but that it was
sufficient if it tended to connect him with such commission.

*Held,* that this charge was correct.

The crime actually committed consisted in the fact that Adams and Keough broke
into the stable of one Baird, took out a horse, led it away and cut its throat; which
act was done, as appeared upon the trial, because of ill-feeling existing between

Bosworth and Baird. The indictment was drawn under subdivision 1 of section 498 of the Penal Code, providing that one who, with intent to commit a crime therein, breaks and enters a building, is guilty of burglary in the third degree. The indictment charged an intent to steal. Larceny is defined in section 528 as taking place where one with intent to deprive the true owner of his property takes it from his possession, and such an act is therein denominated "stealing."

*Held,* that the indictment was sufficient, and that the evidence justified the jury in finding a criminal intent to steal.

A prior conviction, to be available in increasing the punishment for a second offense, must be alleged in the indictment.

Fanny, wife of Keough, testified that Bosworth, upon the day after the crime, drank a good deal and walked the floor.

*Held,* that the testimony was competent as bearing upon his conduct at the time of the offense.

After proof that she was the wife of an accomplice, also under indictment, objection was made to her testimony.

*Held,* that, under chapter 182 of the Laws of 1876, and section 715 of the Penal Code, she was a competent witness.

APPEAL by the defendant Elmer J. Bosworth from the judgment of conviction of the crime of burglary in the third degree, rendered against him by the Court of Sessions held at the city of Binghamton, in and for the county of Broome, on the thirteenth day of July; also from the order of said Court of Sessions in and for Broome county, which denied a motion made in behalf of defendant in arrest of judgment, which order was made and entered in Broome county July 13, 1891; also from the order of the Court of Sessions of the county of Broome, made July 13, 1891, which order denied a motion made in behalf of the defendant for a new trial herein on a case and exceptions made and settled and filed, and on the ground that the verdict is contrary to law; that the verdict is clearly against the evidence, and on the exceptions taken on the trial; and also from the judgment herein adjudging the defendant to be guilty of the crime of burglary in the third degree, and adjudging that he be sentenced to the State prison in Auburn for the term of five years and three months, which judgment was entered in said clerk's office August 18, 1891.

The crime for which the defendant was indicted, as a principal, was actually committed by two persons named Keough and Adams. Ill-feeling existed between Bosworth and one Baird, and Bosworth employed Keough and Baird to break into Baird's stable or barn at

night, lead away a horse and cut its throat. Bosworth was not present, so far as the evidence showed. The indictment was for burglary in the third degree, under section 498, subdivison 1 of the Penal Code, and Keough was indicted for the same offense.

The indictment charged that the appellant, on the 19th day of October, 1890, at the town of Dickinson, "feloniously, willfully and burglariously did counsel, command, induce or procure one Archie Adams feloniously and burglariously then and there to break and enter the building of one S. Melvine Baird, with an intent to commit a crime therein, and with an intent feloniously, willfully and unlawfully to steal, take and carry away therefrom the goods, chattels and personal property in said building then and there being; and the said Archie Adams, in pursuance of the said counsel, command, inducement or procurement of said Bosworth, did then and there feloniously, willfully and burglariously break and enter the building of the said Baird with an intent to commit a crime therein, and with an intent feloniously, willfully and unlawfully to steal, take and carry away therefrom the goods, chattels and personal property in said building then and there being; whereby the said Elmer Bosworth did become a principal in the commission of said offense, and he, the said Bosworth, then and there feloniously, willfully and burglariously did break and enter the building of said Baird with an intent to commit a crime therein, and with an intent feloniously, willfully and unlawfully to steal, take and carry away therefrom the goods, chattels and personal property in said building then and there being, contrary to the statute in such case made and provided."

*A. D. Wales,* for the appellant.

*W. D. Painter,* district attorney, for the respondent.

HARDIN, P. J.:

It was proper to charge, in the indictment, the defendant as a principal. Section 29 of the Penal Code provides as follows: " A person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another

to commit a crime is a principal." The theory of the prosecution is that the defendant directly or indirectly counseled, commanded, induced or procured Archie Adams and Thomas Keough to commit the crime charged in the indictment. The verdict of the jury is to the effect that the defendant is guilty as principal. (See *People* v. *Kief*, 34 N. Y. St. Rep., 528; S. C., affirmed, 37 id., 478; *People* v. *Bliven*, 112 N. Y., 79.)

Thomas Keough was called as a witness and testified that Adams and he committed the crime, and he also "implicated" the defendant; and he states that the defendant counseled and induced the crime.

In *People* v. *Williams* (29 Hun, 522), we had occasion to say "the testimony of an accomplice is not sufficient to convict of a crime," and to quote section 399 of the Code of Criminal Procedure, which is as follows: "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." When the people rested the defendant moved for his discharge, among other grounds, that the People had "failed to connect the defendant with the commission of the offense charged in the manner required by section 399 of the Code of Criminal Procedure." In response to the motion the court observed: "The People have proven a series of conversations and circumstances, from which I assume they will argue it does corroborate Keough and connect the defendant with the transaction; you will undoubtedly argue that it does not; and whether it does, and if it does, it is sufficient to convict him of the crime, is a question of fact for the jury, the court cannot take it away from them, and the motion must be denied." The defendant took an exception to the ruling. In the course of the charge the learned county judge said: "There should be some fact testified to entirely independent of the evidence of the accomplice, which, taken by itself, leads to the inference not only that a crime has been committed, but that the defendant is implicated in it. I charge you in this connection that there is testimony of witnesses other than Thomas Keough, which, if true, might tend to connect the defendant with the commission of the crime but whether such testimony is true, or if you believe it to be true, whether it is sufficient to connect the defendant with the commission of the crime

here charged, I submit as questions of fact to you under the rule which I have just laid down. In this connection, I say to you that it is not necessary that the corroborative evidence itself should be sufficient to show the commission of the crime or to connect the defendant with it ; it is sufficient if it tends to connect the defendant with the commission of the crime."

The defendant took an exception to that portion of the charge. After a careful reading of the evidence and reflection thereupon, giving full force and effect to all the testimony and circumstances revealed, we are of the opinion that the Court of Sessions committed no error in refusing to direct a verdict for the defendant, or in the language used in the charge. We are of the opinion that the evidence tended to corroborate Keough, and besides his evidence the prosecution produced " such other evidence as tends to connect the defendant with the commission of the crime."

In *People* v. *Hooghkerk* (96 N. Y., 149), the court, in giving construction to section 399 of the Code of Criminal Procedure, holds that it " does not require that the whole case shall be proved outside of the testimony of the accomplice, but simply requires evidence from an independent source of some material fact tending to show not only that the crime has been committed, but that the defendant was implicated in it."

In *People* v. *Everhardt* (104 N. Y., 591), it was held that the section was complied with " if there is some other evidence fairly tending to connect the defendant with the commission of the crime charged, so that the conviction will not rest entirely upon the evidence of the accomplice. The question as to whether the evidence is sufficient corroboration is for the determination of a jury."

In *People* v. *Elliott* (106 N. Y., 292) it was said : " It is not necessary that the corroborative evidence of itself should be sufficient to show the commission of the crime, or to connect the defendant with it. It is sufficient if it tends to connect the defendant with the commission of the crime. * * * The court before it should submit the case to the jury should be satisfied that there is some corroborative evidence fairly tending to connect the defendant with the commission of the crime, and when there is, then it is for the jury to determine whether the corroboration is sufficient to satisfy them of the defendant's guilt."

It is insisted in behalf of the appellant that "there is an absolute failure to prove the crime of burglary in the third degree, with which the prisoner stands charged, and of which he was convicted." The indictment alleges that the defendant " did then and there feloniously, willfully and burglariously break and enter the building of the said Baird with an intent to commit a crime therein, and with an intent feloniously, willfully and unlawfully to steal, take and carry away therefrom the goods, chattels and personal property in said building then and there being; whereby the said Elmer Bosworth did become a principal in the commission of the said offense, and he, the said Bosworth, then and there feloniously, willfully and burglariously did break and enter the building of said Baird with an intent to commit a crime therein, and with an intent feloniously, willfully and unlawfully to steal, take and carry away therefrom the goods, chattels and personal property in said building, then and there being contrary to the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity." We think the language sufficient to uphold the charge of the crime of burglary in the third degree. Section 498 of the Penal Code provides that: "A person who, either (1) with intent to commit a crime therein, breaks and enters a building or a room, or any part of a building,   *   *   *   is guilty of burglary in the third degree." Larceny is defined in section 528 of the Penal Code, where it is provided that: " A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either (1) takes from the possession of the true owner,   *   *   *   or secretes, withholds or appropriates to his own use, or that of any person other than the true owner, any money, personal property,   *  *·  *  steals such property, and is guilty of larceny." The jury were warranted by the evidence in finding, that the horse was taken "from the possession of the true owner   *   *   *   with intent to deprive" the owner thereof, and that the horse was secreted with like intent. In *People* v. *Dumar* (106 N. Y., 508), in speaking of section 528 of the Penal Code, the court said: "We find   *   *   *   certain acts enumerated, either one of which performed by any person with intent to defraud the true owner of his property, or of its use or bene-

fit, or to appropriate the same to the use of the taker or of any other person, makes him guilty of larceny, and he, in the language of the Code, steals such property. The crime is committed when, with that intent, a person either, first, takes such property from the possession of the true owner, or of any other person," etc. In *Harrison* v. *The People* (50 N. Y., 518), it was held : " To constitute the offense of larceny there must be a taking of the goods from the power or control of the owner. A temporary possession, however, by the thief, though but for a moment, is sufficient."

In *People* v. *Pollock* (51 Hun, 615), the court, in commenting upon section 528 of the Penal Code and the requirements thereof, said : " To constitute guilt there must be evidence of intent to deprive or defraud the owner, and the jury must find such criminal intent as a fact upon the evidence before a conviction can be had."

In the case before us the court in its charge to the jury, after calling their attention to the statute as to burglary, said the offense alleged was that " of breaking and entering the building on the night in question with the intention of committing a crime." There was no request to make the charge more definite or specific. In support of the learned counsel's argument in behalf of the appellant, citation is made to *The People* v. *Woodward* (31 Hun, 57). In that case the defendant was convicted of grand larceny, having taken a horse from the stable of one Jewell, and killed and buried it in a pit. There was a request that the court charge that " there must be an intent on the part of the taker to reap some advantage or benefit from the taking ; " and it is stated in the course of the opinion, viz. : " Thus the court neglected and refused to point out the essential ingredient of the crime of grand larceny whereby the defendant may have been convicted of a felony, while the facts and the charge were equally applicable to a misdemeanor." No such request and refusal are found in the case before us. If it be assumed that the killing of a domestic animal is malicious mischief, as held in *People* v. *Smith* (5 Cow., 258), and a crime (*Bump* v. *Betts* (19 Wend., 421), and that the same is a violation of section 654 of the Penal Code, it might be said with some plausibility that the commencement or inception of the crime took place when the horse was taken from his stall in his barn ; however, that question was not agitated at the trial or presented, either by a motion at the time

the People rested, nor at the close of the evidence, nor was the court requested to charge upon that subject, and, therefore, we forbear any further comment thereon.

In *People* v. *Richards* (5 N. Y. Cr. R., 364 ; S. C., 44 Hun; 283) it was said in the opinion : " It is not needful to a conviction that an intent to steal or an intent to ' commit a felony ' shall be shown, provided the intent to commit any other crime is averred and established." Although that case was reversed, as appears in 108 New York (p. 137), it was upon another ground, to wit : " That the building, erection or inclosure " was not embraced within section 498 of the Penal Code, it being observed in the course of the opinion, page 497, viz. : " We simply intend to decide this case and no other ; " and " when we come to examine the indictment and the proof giving a description of the structure we come to the belief that it was really nothing more than a grave above ground." We are of the opinion that the indictment sufficiently alleged facts constituting burglary, and that the evidence warranted a finding of the essential facts constituting the crime of burglary in the third degree.

It seems to have been held that a prior conviction, to be available in increasing punishment for a second offense, must be alleged in the indictment. (*People* v. *Young*, 1 Caines, 37, decided in 1803 ; *People* v. *Price*, 6 N. Y. Cr. R., 141.)

In *People* v. *Stanley* (47 Cal., 113 ; S. C., 17 Am. Rep., 401) it was held that " a statute providing that a person shall be subjected to an increased punishment upon conviction for a second offense, is not in violation of a constitutional provision that no person shall be twice put in jeopardy for the same offense ; " the opinion in that case cites 9 Grattan (p. 742), in which it was held that a similar statute in Virginia was not unconstitutional ; and the opinion also cites Ross's case (2 Pick., 170) and *Plumbly* v. *Commonwealth* (2 Metc., 413) as cases approving of a similar statute.

In *Gibson* v. *People* (5 Hun, 542) the indictment set out a former conviction, and in the course of the opinion of MERWIN, J., delivered in that case, it was said : " The charge in the indictment should be so alleged as to be intelligible in its legal requisites and inform the defendant of what he has to meet ; " and in *Wood* v. *The People* (53 N. Y., 511) it was said : " The discharge in one of the ways mentioned in the statute is a fact material and necessary to be

alleged as was the prior conviction." The facts of the imprisonment upon the prior conviction, and the manner of the discharge must, therefore, be alleged and proved. *Wood* v. *The People* was referred to approvingly in *Phelps* v. *The People* (72 N. Y., 355).

In *The People* v. *Cook* (45 Hun, 37), in referring to a statement in an indictment, it was said : "It is to be deemed a first offense, unless the contrary is charged." We are of the opinion that sections 688 and 689 of the Penal Code, relating to second offenses, are valid, and that it was proper to allege in the indictment the evidence which would establish that the crime charged in the indictment was a second offense, and to give proof thereof upon the trial. (*People* v. *Price*, 53 Hun, 185 ; S. C., affirmed, 119 N. Y., 650.)

In *People* v. *Raymond* (96 N. Y., 38), it was said that "the first offense is not made an element of or included in the second, but is simply a fact in the past history of the criminal to be taken into consideration in prescribing punishment therefor;" and in the opinion in that case it was said "the language of the Code makes no reference to second offenses of the same character or grade with the first. It contains no such limitation, and we think none such was intended. Its reason was obviously independent of any such similarity. That the accused has already been convicted of a felony or an attempt to commit one, or of a ' petit larceny,' shows that punishment has done him no good ; that no reformation was effected ; that he is a persistent criminal, towards whom mercy is misplaced ; and by reason of this character of the man, thus shown by his conduct, greater severity of punishment is prescribed. The reason is the same whether both crimes are of similar character, or of the same grade or not. Both are crimes, and the perpetration of the second, however different, shows such a persistence in evil, such a continued criminality, as to justify and make prudent a severer penalty than should be inflicted upon a first offender. If we adopted the construction sought, a prisoner might have been convicted of many felonies, and yet, by judicious changes from one to another, or running up or down the different grades, escape entirely the penalty of a second offense."

Sections 688 and 689 provide for additional burdens upon offenders, and are not affected by the provision in section 714 of the

Penal Code, permitting persons convicted of any crime to be competent witnesses in any civil or criminal cause.

After Fannie Keough had detailed a conversation which she held with the defendant the next day after the alleged offense, she was asked the following question: "Q. Now, I ask her how he appeared?" This was objected to as improper and incompetent; she is not competent to give any evidence of that kind. In response, the court observed: "I think she ought to state what he did and said." Thereupon the question was put to her: "Q. You may state what he did or said, if anything?" The objections were renewed, and the witness answered: "He walked the floor, and he was very nervous." Thereupon the counsel for the prisoner objected to and moved to strike it out; "and if it were shown, it would have no sort of bearing upon this case." The court observed: "It may stand." And thereupon the defendant duly excepted. The motion to strike out was too broad. In *People* v. *Wentworth* (4 N. Y. Crim. Rep., 207), we held that "where a part only of answer is irresponsive a motion should be made specifically to strike out the irresponsive portion." The following question was then put to the witness, viz.: "Q. Go on? A. He drank a good deal. Objected to as improper, irrelevant and incompetent. Objection overruled and defendant duly excepted. A. He was lying in the bed part of the time, then he would get up and walk the floor. Same objection, ruling and exception."

In *Linsday* v. *People* (63 N. Y., 154) ALLEN, J., says: "The question to the witness Moore as to the conduct of the accused about the time of the alleged murder was not objectionable. The acts and declarations of a party are evidence against him, and whether they tend to fix a crime upon him is for the jury." We think the exceptions are unavailing.

Thomas Keough, who was concerned in the commission of the the offense, was called as a witness in behalf of the people, and testified, in effect, " that he was a party to this crime and is under indictment for it," and it was conceded he was under indictment for it. After he had testified, his wife, Fannie Keough, was called as a witness; and after she was sworn the defendant's counsel was permitted to ask preliminary questions of her, and after it appeared that she was the wife of Thomas Keough it was objected that she

was an incompetent witness. The objection was overruled and defendant took an exception. We think she was a competent witness. (*Haskins* v. *The People*, 16 N. Y., 344.)

Chapter 182 of the Laws of 1876 provided that "All persons jointly indicted shall, upon the trial of either, be competent witnesses for each other, the same as if not included in the same indictment;" and in *People* v. *Dowling* (84 N. Y., 484), it was held error to refuse the "testimony of Myron Dowling, though he stood jointly indicted with the defendant in error;" and section 715 of the Penal Code provides that "the husband or wife of a person indicted or accused of a crime is in all cases a competent witness on the examination or trial of such person."

*People* v. *Petmecky* (2 N. Y. Cr. R., 458) is an authority for holding that the wife of the defendant may be called as a witness against him in virtue of section 715 of the Penal Code, though she may not be compelled to disclose any confidential communication passing between herself and her husband during their marriage.

In *Wixson* v. *People* (5 Parker, 127) it was said: "If it was proper to allow Lockwood to be sworn (an accomplice), of course, it was no error to admit his wife. She would not have been competent had her husband been incompetent as an accomplice." Upon the trial of *Linsday* v. *The People* (*supra*), Vader, an accomplice, was sworn as a witness for the prosecution, and she gave evidence tending to corroborate her husband. The conviction was affirmed by this court (5 Hun, 104), and by the Court of Appeals (63 N. Y., 143).

In behalf of the defense, A. P. Fish, an attorney, who had been employed to defend Keough before a justice, was called as a witness, and he testified that on the forenoon of October twentieth, Monday, Mrs. Keough called at his office and asked him to appear for Keough; and that on that evening he went up to Bosworth's house, and in Bosworth's private sitting-room had an interview with Bosworth, who was lying in bed or on the bed; and that he there arranged to see Keough in the morning "and tell him to keep still." He also testified "Bosworth did not have anything to say on the subject of keeping his mouth shut; I said it myself; Bosworth was lying there in bed." At a subsequent stage of the case Fish was called for further cross-examination, in which he stated that he saw Keough at the jail Tuesday forenoon; and he also testified: "I did

not ask him at that time who was at the bottom of it; I did later in the week, but not then; I only saw him once Tuesday; he did not tell me at the time that Bosworth was at the bottom of it." In the course of his redirect-examination, in response to the counsel of the defendant, he stated: "It was Friday forenoon the first he ever told me anything like that Bosworth was at the bottom of it." Thereafter Thomas Keough was recalled for the People and testified: "I saw Mr. Fish at the jail Tuesday morning and had a conversation with him." Against the objection and exception of the defendant he was permitted to testify that the conversation referred to by Fish occurred on Tuesday morning. We think it was proper to fix the date of the conversation.

Appellant has called our attention to other exceptions taken during the progress of the trial, which have been examined, and we are not satisfied that any of them present error which calls for a reversal. (*People* v. *Gonzalez*, 35 N. Y., 49; Code of Crim. Pro., § 542.)

We think the verdict of the jury should stand and defendant serve out his sentence, and the judgment upon the verdict remain.

Martin and Merwin, JJ., concurred.

Judgment and order of the Court of Sessions of Broome county affirmed, and the clerk directed to enter judgment and remit certified copy thereof with the return and decision of this court to the Court of Sessions of Broome county, pursuant to sections 547 and 548 of the Code of Criminal Procedure.